Andrea Denise PULLIAM, Respondent,

v.

STATE of Missouri, Department of Social Services, Division of Aging, Appellant.

No. WD 60362.

Missouri Court of Appeals, Western District.

Jan. 31, 2003.

Rehearing Denied Feb. 27, 2003.

As Modified March 4, 2003.

David S. Durbin, Jefferson City, for appellant.

John M. McFarland, Kansas City, for respondent.

Before ELLIS, C.J., NEWTON and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

This appeal arises from the Division of Aging's denial of an attorney's fee award to Andrea Pulliam, after she prevailed in an employee disqualification list proceeding. We reverse the denial because the Division failed to prove it was substantially justified in seeking to disqualify Pulliam from future employment.

**Factual and Procedural Background**

In 1997, Andrea Pulliam began working as the licensed administrator of the George Nettleton Home, a fifty-bed skilled nursing facility in Kansas City. In December of

that year, an elderly resident of the home developed an infection after a wrist injury and eventually had to have her arm amputated. As a result of this incident, the Missouri Department of Social Services, Division of Aging (Division), issued a Notice of Violation alleging the Nettleton Home neglected the elderly resident. The Division also notified Pulliam that her name would be placed on the employee disqualification list (EDL) [1] for a period of eight years, unless she filed an application to challenge the neglect allegations within thirty days.

Pulliam timely challenged the allegations of resident neglect and was granted an evidentiary hearing. Based on the recommendation of the hearing officer, the Director of the Division issued a written determination that Pulliam "did not recklessly, purposely or knowingly neglect the resident." The Director reversed the decision to place Pulliam's name on the EDL.

Following the favorable decision, Pulliam filed a timely application with the Division for payment of attorney's fees pursuant to § 536.087. Neither the Division nor Pulliam requested a hearing on the fee application. On August 28, 2000, the Director denied the fee application, finding that the initial decision to place Pulliam on the EDL was "substantially justified" based on information available at the time the decision was made.

Pulliam sought judicial review in the Circuit Court of Cass County. On July 26, 2001, the court found the denial of attorney's fees was unreasonable and unsupported by competent and substantial evidence. The court determined there was no substantial justification for placing Pul-

liam on the EDL and ordered the Division to pay her reasonable attorney's fees of $27,750.00 and expenses of $1,822.83. The Division appeals.

## Standard of Review

■ On appeal of this administrative proceeding, we review the decision of the Division, not the circuit court's judgment. *Dishman v. Joseph,* 14 S.W.3d 709, 715 (Mo.App. W.D.2000). Our standard of review is set forth in § 536.087.7:

> The reviewing or appellate court's determination on any judicial review or appeal heard under this subsection shall be based solely on the record made before the agency or court below. The court may modify, reverse or reverse and remand the determination of fees and other expenses if the court finds that the award or failure to make an award of fees and other expenses, or the calculation of the amount of the award, was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, or was made contrary to law or in excess of the court's or agency's jurisdiction.

■ We must defer to the Division's findings of fact and consider the evidence in the light most favorable to the administrative decision. *Dishman,* 14 S.W.3d at 715. We determine questions of law *de novo.* Id.

## Applicable Law

Section 536.087 permits a prevailing party to recover reasonable attorney's fees and expenses in civil actions or agency proceedings unless the court or agency determines the State's position was "sub-

---

1. The EDL is a list of health care or social services workers who have been finally determined by the Department of Social Services to have abused or neglected a resident of a care facility. § 198.070.12, § 660.315. R.S.Mo 2000. The list is made available to various health care facilities and providers. No corporation or entity, which receives the EDL, may employ any person whose name appears on the disqualification list. § 660.315.12.

stantially justified or that special circumstances make an award [of fees] unjust." The sole issue presented in this appeal is whether the Director properly concluded the Division was substantially justified in seeking to place Pulliam on the EDL.

■ Upon the filing of a fee application, the State has the burden of proving substantial justification. *Joseph v. Dishman*, 81 S.W.3d 147, 151 (Mo.App. W.D.2002). Substantial justification requires proof that the State had a reasonable factual and legal basis for its position. *Dishman*, 14 S.W.3d at 716. The State has a duty to present a *prima facia* case explaining the investigative process and defending the reasonableness of the action it took. *Joseph*, 81 S.W.3d at 151.

■ In reaching a fee decision, the agency may consider the facts as determined in the underlying action, how those facts reasonably may have appeared at the time the action was initiated, and the thoroughness of the investigation preceding the action. *Dishman* 14 S.W.3d at 719. The fact that the State did not prevail in the prior action creates no legal presumption that its position was not substantially justified. § 536.087.3. The fee decision must be based on consideration of the entire record of the underlying action and any evidence presented in the fee proceeding. *Id.*

**Proof of Substantial Justification**

■ After prevailing in the disqualification proceeding, Pulliam filed a verified application with the Director of the Division, seeking recovery of her attorney's fees and expenses. The Division did not request a hearing or file a response in opposition to the application. Despite having the burden of proof in the fee proceeding, the Division made no affirmative effort to show substantial justification for its decision to place Pulliam's name on the EDL.

Thus, the Director could only rely upon the record of the disqualification proceeding in determining whether the Division met its burden of proving substantial justification.

The Division initiated the disqualification proceedings with a "Notice of Violation," which set forth the following neglect allegations against Pulliam:

■ From at least December 31, 1997, until the resident was sent to the hospital on January 3, 1998, you [Pulliam] were aware of the deterioration in the resident's condition but you did not act to assure that she received necessary medical treatment ... Facility staff had previously been advised that residents were not to be transferred to the hospital without approval from you or the Director of Nurses.

■ On ... January 2, 1998, you were asked by a facility employee to personally observe the resident's wound. You were aware that the resident's physician was contacted and ordered an antibiotic at approximately 12:45 p.m. The medication was not delivered to the facility until approximately 10:15 p.m.

■ As the administrator of the facility during this time, you were aware that the facility frequently did not have any latex gloves or other necessary supplies available for staff to use when caring for residents ...

These allegations were based on an investigation conducted by a Division employee. The investigation was summarized in a written report and submitted in evidence at the disqualification hearing.

Following the hearing, the Director made the following findings relative to the allegations in the Notice of Violation:

[Pulliam] was the administrator of the Nettleton Home from December 28,

1997 through January 3, 1998. [Pulliam] does not have the medical background or training that would qualify her to personally care for or make medical decisions about the care provided to the residents of the nursing facility.

After beginning her duties as administrator of the Nettleton Home, [Pulliam] put into place policies and procedures regarding resident care.

... [Pulliam] was not aware on December 31, 1997 of deterioration in resident's condition.

... [Pulliam] was not aware on January 1, 1998 or on January 2, 1998 of deterioration in the resident's condition.

[Pulliam] relied on the medical judgment of the nursing facility's professional nursing staff regarding the treatment of the resident.

[Pulliam] made necessary medical supplies available to the staff of the nursing facility. These supplies were stocked in at least six different areas of the nursing facility.

[Pulliam] did not advise the professional nursing staff that residents could not be transferred to a hospital without her approval or the approval of the DON [Director of Nurses].

The hearing officer made specific findings that the evidence did not support the allegations against Pulliam in the Notice of Violation. These findings did not rest entirely upon credibility determinations, as the hearing officer concluded Pulliam had only indirect responsibility for medical treatment issues and no knowledge of the particular resident's deteriorating condition. The hearing officer rejected every factual allegation against Pulliam and ultimately determined that she did not "recklessly, purposely or knowingly neglect the resident at the licensed nursing facility."

Based on our review of the disqualification proceeding, the record is devoid of any evidence indicating the Division was substantially justified in placing Pulliam's name on the EDL. The purpose of the EDL is to restrict the employment of healthcare workers who abuse or neglect a resident of a care facility. § 660.315. As a licensed nursing home administrator, Pulliam's primary responsibility was to put policies, procedures, and personnel in place to address the treatment needs of Nettleton Home residents. The Division's investigation of the December 1997 injury incident failed to show that Pulliam abrogated her administrative duties or acted in some manner to subject the injured resident to abuse or neglect. The Division issued a Notice of Violation against Pulliam upon the apparent assumption that she had direct responsibility for treatment of the resident's medical injury. The record of the disqualification proceeding and the decision in that underlying matter leaves little doubt the Division's position was unjustified.

We concur with the circuit court that the Division failed to meet its burden of proving substantial justification for placing Pulliam on the EDL. No substantial and competent evidence was presented in either the disqualification proceeding or the fee proceeding to defend the reasonableness of the Division's actions. The Director improperly denied Pulliam's fee application because there was no showing the Division had a reasonable factual and legal basis for disqualifying Pulliam from future employment.

We reverse the Director's decision and adopt the circuit court's assessment of the reasonable fees and expenses. The Division is ordered to pay Pulliam's attorney's fees in the amount of $27,750 and expenses in the amount of $1,822.83.

Pulliam's request for attorney's fees on appeal and post-judgment interest is denied for failure to provide any authority in support of the request.

All concur.